Good morning. May it please the Court, Tim McCarthy on behalf of the appellant, Ms. Reva This plaintiff should have surmounted summary judgment in the court below because the case at that point abounded with factual issues at every stage of the analysis that was applied by the magistrate judge granting summary judgment. We presented evidence of direct discrimination, as direct a form of discrimination as... But he was gone, right? I mean, did he have anything to do with her last, what do you call them, the disciplinary things are called? Discussions. Coachings. I mean, yeah, that was direct evidence, but he wasn't a decision maker. Well, what we think the record showed was that in this particular store, and I think the model is the same in all of Wal Mart stores, these employees, the hourly managers, like Ms. Richardson was for 12 or 13 years, are always managed by a group of managers that included and generally includes the store manager and the assistant managers that are assistant to the store manager. But you can't, so are you saying you can impute the ages statement to somebody else after he's gone? In the context of the other conduct that Ms. Richardson complained of and that the record supports, I think it's absolutely reasonable to attribute the conduct of any member of the management team to the other members because it all seemed to unfold in a pattern that included not only the direct statement made by, I believe his name is Mr. Estruth, but also the generally abusive conduct that the store manager, Mr. Darby, was carrying out against Ms. Richardson and taken together. I mean, to say there's no question of fact at the stage of summary judgment as to the question of direct, whether there's direct evidence of discrimination, I think is unreasonable. I mean, yes, I concede that the individual, the one member of the management team, Mr. Estruth, who made that one statement that was the most direct statement, that he was not the person that Wal Mart used in the final moment when the termination decision was executed. He was still, he left, and he was always, at that point he was still very much a manager at the store where she was employed. I think he has since left and has since been moved to a different Wal Mart store. But, I mean, he was involved, Mr. Estruth was involved at multiple points in these purported coachings that, as we've argued in the brief, never even existed, were never documented as part of the personnel file until their defending litigation. That's exactly right. Excuse me, the coachings are not documented? They were not part of the personnel file. They were produced for the first time by Wal Mart in defense of this litigation. Well, that's a good time to produce them, isn't it? Well... I thought she didn't contest that any of these events occurred. Except for one. I mean, she contested every single event in terms of whether there was ever a coaching, as argued in litigation by Wal Mart. But she admitted that she had the meetings, and their answer is that they don't put them in the personnel file, they have the system that she... information has to be made a part of personnel files is to avoid the kind of information asymmetry in litigation that we have here. But, Ms. McCarthy, she didn't contest the fact that this conflict of interest event occurred involving her daughter. She didn't contest that the hazardous material mistake occurred. She didn't contest these multiple unscheduled, scheduled, unexcused absences occurred. That's what we're concerned about. She can argue that that's not enough, but she didn't contest that those events actually occurred. In fact, she apologized for some of it. I mean, she didn't... We have this piling on of, and now new characterization of, facts. That, yes, the bare facts, whether there was ever any factual occurrence related to a series of absences when she was hospitalized. Yeah, no, she doesn't dispute that those facts actually occurred. They were never, never made the subject of a coaching or a disciplinary action, according to the plaintiff, while she was employed, before this litigation arose. When you look at each and every one... I'm sorry to be skeptical, but what would an employee think when they're sat down by a boss and criticized for 1, 2, and 3, and 4, in this case, manipulating an associate to get a computer return? The missing work. Well, that wasn't... You say that's not? She wouldn't understand that to be... The label might not be important as a coaching. That's not what happened, according to her. She doesn't concede any facts that can be reasonably construed as manipulating a return of a laptop. There are basic facts regarding her having had an interaction with somebody. What I'm saying is when you look at the actual factual record closely enough to analyze the factual basis of each of these purported coachings, these facts are substantially disputed at the point of summary judgment by the parties. The only instance where Ms. Richardson concedes that there was what appeared to be a coaching, a disciplinary conversation, was the matter of her absences. And frankly, we probably should have pled a violation of the FMLA, but we didn't, and it's not at issue. But other than that... She would have had to give notice of FMLA.  She didn't do that. No, I don't think that's the standard. She testified below that she gave notice, that the employer conceded being on notice of the reason for the hospitalization. Are you saying the incidents didn't happen, or they weren't treated as coachings at the time? I'm saying they weren't even construed factually as remotely... Or that they were not treated as coachings at the time, or both? I think I would... I don't want to be... I'm not trying to avoid the question, but I want to be clear. We certainly are saying that they were not treated as coachings at the time. To even construe them as incidents, except for the absence... The law requires an employer to come up with a reasonably considered judgment. It doesn't have to agree with your client's... We know this, right? Yes, yes. And then, your client's obligation at the summary judgment stage, or whenever, is to come back with evidence to the contrary. Yes, and in each of those... As to each of those instances, she's the only witness that remembers anything, I mean, with a couple of exceptions, about any of these facts, first of all. Their witnesses show up, like most sophisticated employers do, and say, we don't really remember anything about any of these purported coachings. She provides an intimate, factual explanation of each one, and at each point, she substantially, factually disputes the basis of the purported coaching. Missing work. What about the missing work? She was hospitalized continuously for a life-threatening condition, and they notified the store. And she's... But what about this statement by her? Does she dispute that she said, I understand by not properly packaging the hazard material that it could have created a serious impact to our store. I need to be more careful when scanning items to be returned, I think that is. I will review the SOP and follow their guidelines. I will use this as a learning tool to go forward so that I do not make this mistake again. She never testified that she said... Place of coaching, time, place, September 9th, 2011. Well, I mean, how much can she dispute? She denies... She signed it, for Pete's sake. It's an electronic document, Judge. There's no signature on any of these documents. They're not part of the personnel file. We're back to Judge White's good question about, does she deny that piece of paper? She denies ever seeing or signing that piece of paper before litigation arose. Does she deny the event and the statement that she made admitting that it was a mistake? I don't, Your Honor, recall if that specific question was ever put that way in the discovery record. But I can tell you that she would concede, if she were here today, that she may have mispackaged a mosquito spray product. But that very year, she's awarded... This is not the jury today. No. You know the difference, right? Or just reasonably? Unfortunately, clients in these cases never get to juries, so this is the only chance I get. You're saying that she disputes ever seeing that document? Yes. Does she concede that she made those statements? Not as they're stated in the document. Okay. And she does not concede that there was something that she recognized as a coaching as a result? She does not, absolutely does not concede that. And her records that are part of the personnel file reflect that she was evaluated favorably every year, that these were never the subject of the annual evaluations that are a part of the personnel record. Are you saying that the Elliott-Larson Act requires that these be part of her file? The Michigan... Maybe it's not the Elliott-Larson. The Michigan Bullard-Ploiecki Employee Right to Know Act addresses this exact issue. It's exactly why we have the law, so that employers can't take, you know, benign facts and in defense of litigation now construct what they purport to be a progressive disciplinary record. And what is this online system? It's all within the control of the upper-level management at Walmart. We could never know. We can hear the answer from Mr. Palmer since your time has expired. Good morning, Your Honors. May it please the Court, my name is Mike Palmer. I'm representing the appellee, Walmart. Your Honors, I'd like to... The Court should affirm the District Court's decision in this case. This is a simple case of enforcing progressive discipline. And rather than go through all the briefs... We have an unanswered question.  I think the question was the coaching for improvement process. Is that right? No, it's the record. You disagree that these documents are not in her personnel file, right? That's right. They're not in her personnel file, her physical personnel file. They're maintained electronically. Nothing in the law prohibits, nothing in Michigan's law prohibits an employer from maintaining any personnel record electronically. The personnel file itself is electronic. In part, yes. In theory, there is a personnel file. Exactly. You're not saying that. You're saying there is a written personnel file and these are not in it. A hard copy file. There is a hard copy file. These coachings are not in it. They're part of an elect... The Bullard-Pulwicky Act defines personnel records. So if Wal-Mart had been served with a request for her personnel file, what would have it produced? It would have produced the file, what's in that file, but also any other personnel record that would come under that statute, which would have included the coachings. So under that statute, yes, these coachings would be covered as personnel records. Okay, so I'm looking at them and I gather that what the claim is, in order to create a dispute of fact that would destroy the basis for summary judgment, is that Wal-Mart came up with these after the fact, that they were put online and that, in fact, these coachings and all this information never occurred. That's what I think he was telling me is that it was created for litigation purposes. And if that's their position, that's incorrect. And the record does not substantiate that. Does the record show that they were, in effect, filed electronically when they happened? Yes. Okay. The record shows, both through affidavits from the supervisors who issued these coachings as well as the plaintiff's own testimony, that there was a process whereby this information was presented to her. Are employees told that this is a coaching event under our policies? This is now your second coaching in 12 months? Yes. The coaching process, the way it begins, is that there's a violation of a policy. The supervisor logs on to the electronic coaching system with his or her password, inputs what the policy violation is, inputs various information into it, then brings the associate in to sit down and review the coaching with him or her, at which time the associate has access to what we now have that's been printed. It's just not printed for the associate. They're in front of the computer screen. They see it. They oftentimes have to type in, for the second and third coachings, they have to type in an action plan, how they're going to improve on this particular issue. And that was done in this case. She sat down at the computer. She logged on. So the words that were Judge Daughtry's reading are the plaintiff's words, Reva's words, Ms. Richardson? That's right. I think it's the second coaching about the hazmat issue. Those all-cap words under action plan, those are Ms. Richardson's words that she typed in. We know she typed it in because I believe her deposition testimony confirms that. And secondly, she's the one with the password that had to log in to input that information. Is that true of the first one? The first coaching is the associate only types in an action plan for the second and third coaching. The first coaching is effectively the associate doesn't have to. The discharge that occurs on the fourth here doesn't include a request for completing an action plan, obviously. She's gone. She's gone. That's right. So does she have any input at that point? Did we know anything about that in the file, about the day she was discharged? We know that she was presented with the discharge at a meeting with two other – From depositions? Yeah, with two supervisors. She didn't open door it. So Walmart has an open door process whereby you can challenge any sort of employment action that you encounter in the workplace, including a termination. Was the termination challenged? It was not challenged. She didn't raise it with anyone. Is he still at the building? I'm sorry? The one who made the offensive comment? What's his name? No, I think that was confusing on an appellate argument. So the person who made the alleged ageist comment was Adam Estruth. Adam allegedly made that comment in October of 2012. He transferred to a different store November 2012. Ms. Richardson was terminated March 2013. So he had been gone from the store for five months. Was he on the same management team? He was not on the same management team at that time. So I think where it was confusing is that there was some talk about other comments or other evidence. Mr. Darby, who was the store manager, was there at the time, but he did not allegedly make any sort of ageist comments. Are you contending that it's the same standard under the Elliott-Larsen Act? Yes, Your Honor. Where do you get that from? I get that from various Sixth Circuit opinions, the Geyer, I say three, the Geyer opinion, the Bundant opinion. The problem with those sites is that we do not create state law. So the best sites would be Michigan state courts saying what the standard is. That's right. And so at this point, there isn't a Michigan state court that has addressed the issue that I'm aware of. They use the same language that they used before Gross. That's right. So the statute, the Elliott-Larsen statute, uses the because of language, which the Supreme Court, not only in Gross but in Nassar, has established that because of equals but for. But the Michigan cases have used the same language that they used before Gross, after Gross, haven't they? In other words, they've been using the same standards. No. They had a different standard. They were not using but for. It has to have a, I'm sorry, it's just the standard has escaped me, but it's not but for. It was more substantial factor or something like that. The one case that has been cited in the briefing at the district court level was the Howard case. It's a Michigan appellate court case, I believe, in 2013. And in that case, the court used different language than but for, but compared the standard in Michigan to that of the standard used by federal courts to interpret the ADEA. In other words, it appeared, it said the standard is similar. It also cited... That was before Gross, right? It was after Gross. Cited the Geier case, which in Geier in the Sixth Circuit held that the but for standard applies. So Howard, the one, the case, the Michigan appellate court case that I'm aware of that's been in these briefings, suggests as though the Michigan courts would adopt a Gross standard. Now, but I don't believe that that issue has been addressed by Michigan Court of Appeals. Okay. In this court, the Sixth Circuit has used that standard in the three cases that I cited and then there's also several unpublished decisions, the Dibble and the Marsh decision, where the but for standard was applied to both the Elliott-Larsen Act as well as the ADEA claim that were pending in that case. And part of the rationale is that Michigan courts have deferred to the federal court substantially on the issue of interpreting its civil rights statutes. I want to point out a couple other things before I rest, and that is, you know, there's obviously talk about did these coachings exist, did they not exist. We believe they did. We believe it's established by the record. But it is undisputed even now that Ms. Richardson received the third coaching, the coaching for attendance. She acknowledged it. And by acknowledging that coaching, she implicitly recognized that there were two other coachings preceding it because why else would she be at the third stage. So that's just a factual issue that I don't think was highlighted well enough in the briefs that I want to point out to you. You know, in oral argument, the district court left. She offered an action plan. That's right. For that one as well. For the attendance one, yes. If she had been in the hospital for a life-threatening problem and they found this out later and not before, I mean, one might end up in the ER without notifying one's employer that one was not going to be present the next morning. Wouldn't that be taken into consideration? Walmart's policy does take those issues into consideration. So absences that are approved, that are for medical leave, don't count as occurrences. Okay. So what would you do? Would you come in with a note from your doctor after the fact and it would then be excused? If you seek FMLA leave, there's a whole certification process that the Department of Labor provides. No, I just fell down the steps and got taken to the ER, didn't notify anybody it was going to happen, but couldn't come to work on Monday and Tuesday. Happened on the weekend, didn't feel like I was either in the hospital or whatever. And I come in on Wednesday with a note from the doctor. Would that have taken care of the unexcused absence? A few points. Number one, the answer is no, not unless it's approved leave, so covered under some statutory requirements. So if it can't be counted under the law as an absence because the ADA prohibits it or the FMLA prohibits it, then it won't be counted as an absence under Walmart's policy. But if it's not covered by one of those statutory leaves, then yes, it would be counted as an absence. But you do have six. A disciplinary absence? It counts as part of... The time off. We get that, that there's a limit on how many days you can have off. But would it be... It would count as an occurrence. Would it be coached? If you came with the doctor's excuse, would you get a coaching over that? I guess that's more what we're... You're used to the policy about there's only so many days off. We get that. But what about, is it a punishable, a disciplinary thing, that you came with the doctor note? If an absence isn't covered by an exclusion. So they have to have this general rule and you've got to... But that's about your absences. That's right. It's not about coaching, is it? It is. It is an occurrence. It could be an occurrence that is subject to coaching, yes. Now, here she said, I was in the hospital and I wanted to provide a doctor's note. She was offered the opportunity to do that. She never did that. So factually it's different. But had she offered the note, perhaps what would have happened is that the FMLA process would have been engaged in. And then the determination would have been made, is this an FMLA-covered absence or not? And if it was an FMLA-covered absence, it wouldn't have been counted as an occurrence. If it wasn't an FMLA-covered absence, then it probably would have been counted as an occurrence. But we don't know because she never engaged in that process. And beside the point, the point here for our purposes is, was it a discriminatory decision? Was the issuance of that... What was the termination a discriminatory decision? And I believe that the appellant doesn't even challenge the coachings as being discriminatory. That was conceded at oral argument at the district court level. Page 45, I believe it is. But beyond that, nothing in the record suggests that the way that those attendance issues were addressed with Ms. Richardson was different from the way they were addressed with anybody else. So with that, Your Honors, I will rest unless you have any other questions. Apparently not. So we thank you for your argument. Did you reserve some time, Mr. McCarthy? Yes. So they've had a change in counsel since the entry of summary judgment. I can tell you, I sat for every hour of every deposition that occurred in this case. And it is absolutely untrue that... You say it's not there. I'm sorry, the issue I should have prefaced, that these coaching documents were ever made a part of anything that could constitute electronically or in hard copy a personnel file. I'm interested in this. So how do you know that? Just a second. Had she made a request at some point and not received it? Yes. So that would be yes. And I can tell you, my office, the first thing we do in every employment case is request a copy of the personnel file for this very reason. They're not there. Their managers conceded in discovery that they're not part of the personnel. Just a second. You requested a copy of her personnel file. Yes. All right. You were given a copy of certain hard documents that were in a hard file. And you were not also given printouts off the system? No. Okay. Certainly not any of these documents that arose in the litigation. Okay. No. Had she at some prior time requested her personnel file and not received these? I don't know, to be honest. Okay. But I can tell you they conceded in discovery that these were documents that could only be accessed by management. They were not made a part of anything that even they claim to be the personnel. But, counsel, those are two different things. You can have something that the company regards as a personnel file that is held in three different places, and management can only look at one section of the file. The question is that when someone asks for the file, who has a right to see it, do they get all three sets of documents? I agree. What I'm saying is they conceded in discovery that based upon that definition, these would have never been part of that disclosure. How did you get to know this? Because they produced them to question the defendant and her deposition when they were defending this lawsuit. It's the first time they ever arose, ever. Ever arose. The first time you saw them. Yes. Okay. And this was argued below. Yes. I agreed. I thought it was implicit in the Your Honor's questioning. I don't know what the premise would be to even speculate about whether gross would affect state substantive law. It certainly has not. The standard that continues to find expression in Michigan's employment cases is a factor. Was the discrimination a factor in the adverse employment action? You were trying to recall that. Thank you. We have your matter. You'll receive an opinion. Thank you for your work.